IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-03215-RBJ

JAVIER TORRES ROMAN,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

### ORDER

---

This matter is before the Court on review of the Commissioner's decision denying claimant Javier Torres Roman's application for Social Security disability benefits. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses and remands the Commissioner's decision.

### I. Standard of Review

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less

than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

## II. Facts

Mr. Roman, who was born on August 12, 1970, grew up in Puerto Rico, where he attended school—in Spanish—through 8th grade. R. at 53. He now lives in Colorado Springs, Colorado with his wife and stepchildren. R. at 54. The claimant has had multiple surgeries for hernia repairs, and he currently suffers from diabetes mellitus and chronic abdominal pain related to the surgeries. R. at 51. Before he began having problems with his health, Mr. Roman did plating work with nickel and copper. R. at 54.

### A. Procedural History

On June 27, 2008, Mr. Roman filed an application for Title II and Title XIV benefits based on disability beginning on August 28, 2002. Both claims were initially denied on September 4, 2008. The claimant then filed a request for a hearing, which was held on September 7, 2011 in front of Administrative Law Judge Peggy S. Ball. The ALJ denied the claimant's application for benefits on September 15, 2011, but the Commission remanded the decision for further proceedings on November 15, 2012. Following remand, the ALJ held a second hearing on April 2, 2013 and then issued a second decision denying benefits on May 2, 2013. The Commission denied Mr. Roman's request for review on September 26, 2013. He filed a timely appeal in this Court.

### B. The ALJ's Decisions

The ALJ first issued an unfavorable decision denying benefits on September 15, 2011.

R. at 610.  As relevant here, the decision found—without any analysis of the claimant's language ability—that Mr. Roman was able to communicate in English and had the residual functional capacity ("RFC") to perform light work with some physical limitations.  R. at 620, 624.  Because the ALJ concluded that the claimant could perform work as a cafeteria attendant, cashier, or counter attendant, she found that he had not been under a disability.  R. at 625.  After the claimant appealed, the Appeals Council remanded the decision to the ALJ with instructions to "[c]larify the claimant's ability to communicate in English including English literacy."  R. at 634.  The Appeals Council opinion noted that the claimant had alleged that he could not read or understand English.  R. at 633.  Furthermore, it appeared that many forms in the record were completed by someone other than the claimant, and one physician, Dr. Robbins, had noted that Mr. Roman spoke with a heavy accent and at times was difficult to understand.  R. at 633.  Lastly, the Appeals Council noted that the claimant required an interpreter at his hearing in front of the ALJ.  R. at 633.

On remand, the ALJ issued a second unfavorable opinion.  In this opinion, she found that the claimant had the RFC to "perform sedentary work that . . . does not require more than occasional interaction in English."  R. at 53.  Her analysis noted that the claimant did complete some forms in the record himself and did not seem to have difficulty communicating with a SSA representative during a face-to-face interview.  R. at 58.  Additionally, the ALJ emphasized that Dr. Robbins had said that Mr. Roman was hard to understand only "at times" and that the doctor did not report that she could not understand him.  R. at 58.  Thus, the ALJ concluded, the claimant's difficulty with English had been "adequately accommodated" in her RFC assessment.  R. at 58.

The ALJ's opinion next found that the claimant could not perform any past relevant work, but considering his age (32 years old), education ("limited"), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he was capable of performing. R. at 58–59. In making this finding, the ALJ noted that Mr. Roman "is able to communicate in English." R. at 59. Relying on testimony from a vocational expert ("VE"), the ALJ found that the claimant could work as an "Escort Vehicle Driver (DOT 919.663-022)" or a "Final Assembler (DOT 521.687-086)." R. at 59. She also noted that the VE "testified further that for the language difficulty, there might be a 10% erosion of the job base for the Escort Vehicle Driver . . . [and] the individual might occasionally have to ask for directions in English, but typically the individual would rely on a map." R. at 59. Because there were jobs that the claimant could perform, the ALJ concluded that he had not been under a disability. R. at 60.

### III. Discussion

The claimant takes issue with the ALJ's analysis of his language ability in the second opinion. Specifically, he contends that the ALJ's opinion is flawed in the following ways: (1) it fails to comply with the Appeals Council's directive to evaluate the claimant's English abilities, (2) the ALJ's RFC assessment was not supported by substantial evidence, (3) the ALJ failed to resolve a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT") regarding the Escort Vehicle Driver job identified at step five, (4) the ALJ did not consider the claimant's English ability in finding that he has a "limited" education, and (5) the ALJ improperly identified the Final Assembler job at step five. The Court addresses each point in turn.

#### A. The Appeals Council Decision

The claimant contends that the ALJ's second decision fails to comply with the Appeals Council's order. ECF No. 14 at 4. Upon review of the ALJ's first decision, the Appeals Council directed the ALJ on remand to "[c]larify the claimant's ability to communicate in English including English literacy." R. at 634. In her second decision, the ALJ devoted a full paragraph to a discussion of Mr. Roman's English abilities, noting that he did complete some forms in the record himself and did not seem to have difficulty communicating with a SSA representative during a face-to-face interview. R. at 58. She also emphasized that Dr. Robbins noted that Mr. Roman was hard to understand only "at times," and the doctor did not report that she could not understand him. R. at 58. For these reasons, the ALJ concluded that the claimant's difficulty with English had been "adequately accommodated" in her RFC assessment, which limited him to no more than "occasional interaction in English." R. at 53, 58. Given this discussion, the Court cannot find that the ALJ failed to "clarify" Mr. Roman's ability to communicate in English. Although she could have further explored his ability to read and write in English, the Court is satisfied that the ALJ complied with the Appeals Council's directive. Indeed, the Commission denied Mr. Roman's request for review of this decision. R. at 32. Thus the Court declines to remand the decision on this basis.

### B. The ALJ's RFC Assessment

The claimant next argues that the ALJ's RFC determination is not supported by substantial evidence. ECF No. 14 at 4–8. After reviewing the record, the only limitation on the claimant's English abilities that the ALJ included in her RFC finding was a restriction to work that "does not require more than occasional interaction in English." R. at 53. Because the ALJ was directed by the Appeals Council to consider the claimant's level of English literacy, R. at

634, and the opinion notes that the claimant's difficulty with English had been "adequately accommodated" in the RFC determination, R. at 58, the fact the RFC does not include any literacy limitation amounts to a finding that the claimant had no such limitation.[1] Thus, although the ALJ did not explicitly say so, she essentially made two findings: (1) the claimant's speaking ability limited him to occasional interaction in English, and (2) there were no limitations on his ability to read and write. In making these findings, the ALJ relied on the following evidence: the fact that Mr. Roman completed some forms in English himself, Dr. Robbins' statement that Mr. Roman was hard to understand "at times" coupled with the absence of any statement that she could not understand him, and the fact that he did not seem to have difficulty communicating with a SSA representative during a face-to-face interview.[2] R. at 58 (citing R. at 167, 185, 353).

Beginning with Mr. Roman's speaking ability, the Court is satisfied that the second and third facts cited by the ALJ constitute substantial evidence that the claimant could interact occasionally in English. *See Wall*, 561 F.3d at 1052 (substantial evidence requires "more than a scintilla, but less than a preponderance"). Indeed, the fact that Dr. Robbins was able to complete her exam and the SSA representative's ability to understand him both suggest that he is capable of some interaction in English. The claimant's attempt to discredit this evidence lacks merit.

---

[1] As the plain meaning of the word "interaction" implies, the ALJ's use of the word here seems to refer to the claimant's speaking ability. During the ALJ's questioning of the VE, the VE testified that, considering the claimant's limited ability to interact in English, there might be a 10% erosion of the job base for the Escort Vehicle Driver job because "the individual might occasionally have to ask for directions in English, but typically the individual would rely on a map." R. at 739. The VE did not mention any difficulty that an individual such as Mr. Roman would experience with aspects of the job that involve reading and writing, despite the fact that the DOT requires some level of reading and writing ability. *See DOT* 919.663-022, 1991 WL 687886. Indeed, the government does not argue that the ALJ's RFC finding includes a literacy limitation. *See* ECF No. 15 at 9–13. As the government recognizes, the only evidence relevant to literacy that the ALJ discussed in the paragraph analyzing the claimant's English proficiency was his apparent ability to fill out a form himself. *See* R. at 58. This evidence alone could not support any literacy limitation.

[2] The ALJ also noted in another part of the discussion that the claimant's wife "does not speak very much Spanish," thus inviting the inference that Mr. Roman must be able to communicate in English with his wife. R. at 54.

Specifically, the claimant points out that the SSA representative's interview form states that he was "a bit shy to speak in [E]nglish, very soft spoken." R. at 168. However, this observation does not undermine the fact that the report notes that Mr. Roman had no difficulty understanding, talking, or answering. *See* R. at 167.

Nor does the claimant point to other evidence that overwhelms the ALJ's finding on Mr. Roman's speaking ability. The claimant's brief cites the following evidence to suggest that his English is more limited than the ALJ found it to be: hospital records noting that Spanish is his primary language and that there is a language barrier; the fact that he used an interpreter at both hearings before the ALJ; his own testimony that he has trouble understanding English when it is spoken to him and his own spoken English is broken; and the fact that at previous jobs he worked with many Spanish speakers. ECF No. 14 a t 5–6 (citing R. at 441, 444, 719–20). Although this evidence might support a finding of a more limited ability to communicate in English, it is not enough to overwhelm the ALJ's finding. Thus the claimant's argument is little more than an invitation to reweigh the evidence, and the Court declines to remand the decision on this basis. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

Turning to Mr. Roman's reading and writing abilities, the Court cannot find that an RFC assessment with no literacy limitation is supported by substantial evidence. The only evidence relating to reading and writing that the ALJ's opinion discusses is the fact that Mr. Roman filled out a form in English himself.[3] *See* R. at 58. However, other evidence in the record overwhelms

---

[3] The claimant argues that there is no evidence that Mr. Roman did in fact fill out the form that the ALJ references in

7

the ALJ's finding. *See Bernal*, 851 F.2d at 299 (a decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record"). Most significantly, as the ALJ noted, the claimant reported that he attended school through 8th grade in Puerto Rico, where school was taught in Spanish. R. at 718. Common sense would dictate that a person of such a limited educational background would likely have some limitations on his ability to read and write, particularly in another language. Furthermore, the claimant testified that he has "not really" learned to read and write in English and when he tries to read English, his understanding is poor. R. at 719. Given this evidence, the Court cannot find that an RFC assessment with no literacy limitation is supported by substantial evidence, and thus the decision must be remanded on this basis.

### C. The DOT Description of the Escort Vehicle Driver Job

Next, the claimant argues that the ALJ did not address the language requirements of the Escort Vehicle Driver job described in the Dictionary of Occupational Titles ("DOT").[4] ECF No. 14 at 8. This is essentially an argument that the ALJ failed to resolve a conflict between the VE's testimony and the DOT.[5] Under the Social Security Rulings,

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the

---

her discussion. However, the form itself has a space labeled "Name of person completing this form," and the claimant's name is printed there. R. at 185. Although it is possible that someone else filled out the form for him, there is no evidence to suggest that, and the ALJ was entitled to make the inference that the claimant did complete the form himself.

[4] The Court notes that the claimant's attorney brought this issue to the attention of the ALJ in a letter sent the day after the hearing. Furthermore, the claimant was not required to raise the issue in proceedings before the ALJ or the Commission in order to challenge it here. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).

[5] The VE's testimony is also problematic to the extent that it relies on the flawed RFC assessment, and, on remand, the hypothetical presented to the VE must reflect any additional limitations included in the RFC.

> claimant is disabled. . . . Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p.

Here, the claimant contends that such a conflict exists because, although the VE testified that a person with vocational factors similar to those of Mr. Roman could work as an escort vehicle driver, the DOT description of that position requires language abilities beyond what the claimant possesses. Specifically, the DOT requires a language level of 2 and the ability to communicate with other drivers about changes in speed or route, emergencies, or traffic congestion,[6] while the VE's testimony was based on a hypothetical person who could interact only occasionally in English. *See DOT* 919.663-022, 1991 WL 687886. The Court agrees that this is an apparent conflict between the VE's testimony and the DOT. Furthermore, the ALJ did not ask the VE to resolve this conflict. *See* R. at 740. Indeed, the ALJ found that, except for the 10% erosion of the job base that the VE estimated based on the claimant's language abilities, "the [VE's] testimony is otherwise consistent with the information contained in the [DOT]." R. at 59. Thus the ALJ did not elicit a reasonable explanation for an apparent unresolved conflict, and her analysis does not comply with SSR 00-4p.

The government argues that the ALJ properly relied on the VE's testimony that her opinion was consistent with the DOT, and thus the ALJ cannot be faulted for the failure to

---

[6] A language level of 2 requires that a person be able to speak clearly and distinctly with appropriate pauses and emphasis, correct punctuation, and variations in word order; the person should also be able to use present, perfect, and future tenses. *DOT* 919.663-022, 1991 WL 687886. Somewhat confusingly, the DOT also states that talking and hearing are "[n]ot present" in the job and thus appears to be internally inconsistent. *See id.* Nonetheless, the Court thinks it proper to rely on the primary description of the job, which states that an escort vehicle driver must "communicate[] by two-way radio with truck and other pilot vehicle drivers to coordinate changes in speed and route, emergencies, or traffic congestion." *Id.*

resolve any conflict.  The government's brief points to the portion of the hearing transcript in which the ALJ asked the VE if her testimony had been "consistent with the DOT" and the VE replied that it had.  R. at 740.  However, this exchange does not amount to a "reasonable explanation" of the apparent conflict regarding the necessary language skills of the job, and thus it is insufficient under SSR 00-4p.  Nor does the VE's statement that "there might be [erosion in the job base], maybe 10 percent if that person needed to get directions in English," R. at 739, resolve the inconsistency between what the VE testified a person with the claimant's RFC could do and what the DOT says the job requires in all cases.  Indeed, it does not appear that the VE considered the specific language requirements laid out in the DOT at all.  *See* R. at 736–40.  Thus the VE's testimony did not resolve the apparent conflict, and the ALJ was not entitled to rely on it.[7]

For the reasons laid out above, the Court finds that the ALJ did not follow the applicable legal standard in failing to resolve an apparent conflict between the VE's testimony and the

---

[7] The cases that the government cites to suggest that the ALJ could rely on the VE's testimony here do not in fact support this position.  In *Haddock v. Apfel*, the court stated that "an ALJ has a duty to fully develop the record even when the claimant is represented by an attorney . . . Questioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations [such as the DOT] falls within this duty."  196 F.3d 1084, 1091 (10th Cir. 1999).  The court went on to note that "[its] decision on this issue is consistent with the majority of circuits to have considered it. . . . Only the Sixth Circuit has held that an ALJ may unreservedly accept a VE's testimony at step five even if it contradicts the Dictionary of Occupational Titles.  We are unpersuaded that the Sixth Circuit's approach is consistent with the broader principles that govern these nonadversarial proceedings."  *Id.* (internal citations omitted).  Similarly in *Thompson v. Colvin*, although the court rejected the claimant's argument that the VE's testimony conflicted with the DOT where "the VE testified that the jobs he identified were consistent with a hypothetical person with [the claimant's impairments] and the DOT," it cited caselaw for the proposition that "[an] ALJ must inquire about and resolve any conflicts between the VE's testimony and a DOT job description."  551 F. App'x 944, 949 (10th Cir. 2014).  Thus both cases make clear that an ALJ has a duty to resolve any apparent conflict between VE testimony and the DOT.  Lastly, in *Segovia v. Astrue*, "the VE's testimony [did] not conflict with the DOT and SCO so much as it clarifie[d] how their broad categorizations appl[ied] to this specific case."  226 F. App'x 801, 804 (10th Cir. 2007).  For this reason, the language the government quotes from *Segovia* is not directly applicable here.  *See id.*

DOT. On remand, the ALJ should address this issue.[8]

### D.  The Finding of Limited Education

The claimant argues that the ALJ's finding that he had a limited education, R. at 59, is improper under the relevant regulations. ECF No. 14 at 9.  20 C.F.R. § 404.1564(b)(3) provides that a "limited education" generally corresponds to a 7th through 11th grade level of formal education.  Because the claimant attended school through 8th grade, a finding of a limited education would seem appropriate here.  However, the claimant points to 20 C.F.R. § 404.1564 (b)(5):

> Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor.  Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language.  Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do.

The ALJ's decision provides no explanation for her finding of a limited education, and thus the Court cannot determine whether the ALJ considered Mr. Roman's language ability in making this finding. *See* R. at 59.  Nonetheless, it is clear that the ALJ did consider his language ability in her RFC assessment, R. at 58, and thus it was a factor in her analysis of what work the claimant could do.  For this reason, the Court finds that any error the ALJ committed in failing to consider Mr. Roman's limited English abilities in making a finding about his level of education was harmless.

### E.  The Final Assembler Job

---

[8] The Court notes that this error would be harmless if no actual conflict exists. *See Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009).  Because the Court remands the decision on other grounds, it is not necessary to undertake a harmless error analysis here.  However, the Court thinks it unlikely that the ALJ's RFC assessment can be squared with the DOT requirements, and thus an actual conflict probably does exist.

Lastly, the claimant argues that the ALJ improperly relied on the Final Assembler job to meet her burden at step five. ECF No. 14 at 9. The parties agree that the VE, and thus the ALJ, inadvertently gave the wrong DOT code when identifying the Final Assembler job as one that the claimant could perform. The claimant argues that because there are three Final Assembler jobs listed in the DOT, there is no way to know which one the VE was referring to, and thus the ALJ cannot rely on this job at step five. However, as the government points out, only one of the three jobs is a sedentary position. *See DOT* 713.687-018, 1991 WL 679271 (sedentary); *DOT* 789.687-046, 1991 WL 681261 (light work); *DOT* 706.381-018, 1991 WL 679029 (medium work). Since the ALJ's RFC determination limited the claimant to sedentary work, it is clear that the job the VE was referring to is the one at *DOT* 713.687-018, 1991 WL 679271. Thus this error was clearly harmless. *See Garcia v. Astrue*, No. 10-CV-00153-LTB, 2011 WL 93753, at *3 (D. Colo. Jan. 11, 2011) (finding harmless error in similar circumstances).

The government argues that even if the ALJ improperly relied on the Escort Vehicle Driver job, the fact that she also found that Mr. Roman could work as a final assembler is sufficient to uphold the decision. However, because the Final Assembler job requires some level of reading and writing ability—albeit a low one—the Court cannot uphold the decision on this basis in light of the conclusion above that the RFC assessment is not supported by substantial evidence. *See DOT* 713.687-018, 1991 WL 679271. On remand, the ALJ should consider any literacy limitation included in the RFC when determining whether the claimant can work as a final assembler.

### IV. Conclusion

In sum, the ALJ's RFC assessment is not supported by substantial evidence, and her

opinion fails to resolve an apparent conflict between the VE's testimony and the DOT. However, it is not clear that correction of these errors will necessarily change the ALJ's conclusion that benefits should be denied, and thus the Court declines to award benefits at this time. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006). Therefore, the decision of the Commissioner is REVERSED and REMANDED for further findings.

DATED this 23rd day of March, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge